UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CRIMINAL ACTION NO. 1:05CR-32-M

UNITED STATES                                                                                    PLAINTIFF

V.

ANTHONY WAYNE JESSIE                                                                 DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Defendant, Anthony Wayne Jessie, to suppress all physical and testimonial evidence obtained as a result of a search of his residence on February 14, 2005, pursuant to a search warrant [DN 20]. Defendant also filed a supplemental motion to suppress the evidence [DN 24] and the United States filed responses [DN 22, DN 30]. After resolving one of the issues raised in the motions to suppress, the parties agreed that an evidentiary hearing was not necessary. Fully briefed, this matter is ripe for decision. For the reasons set forth below, the motions by Defendant to suppress the evidence are **denied**.

**I. BACKGROUND**

On February 14, 2005, Deputy Sheriff Steve Woods of the Allen County drug task force filed an application for a search warrant for the residence of Anthony Wayne Jessie located in Scottsville, Kentucky. Deputy Woods submitted an affidavit in support of the application for a warrant in which he stated that:

> On the 14 day of February, 2005, at approximately 10:30 a.m., affiant received information from: Ricky Mitchell that he had taken the welder which he had

> taken from 1640 Carl Hurt rd to 270 Ray Vernon Rd. and traded it to Anthony Jessie. The welder had been reported stolen by the owner during the investigation of a methamphetamine lab at 1640 Carl Hurt Rd. in early January.
>
> Acting on the information received, affiant conducted the following independent investigation: NA.

A search warrant issued on the same day authorizing the search of the residence, any automobiles on the property including those within the salvage auto "junk yard," Anthony Jessie and all persons found on the property. The residence was described as "[a] white colored camper on the left hand side of the Ray Vernon Ln, the second drive after turning onto Ray Vernon Ln from Ky 234, that is with in the tin-walled fenced area of a salvage auto 'junk yard.'" Upon execution of the search warrant, the law enforcement officers discovered drug paraphernalia. The law enforcement officers then sought a second search warrant. Deputy Woods submitted an affidavit in support of the application for the second warrant in which he stated that:

> While executing a search warrant for a stolen wire welder and while doing so inside a camper trailer on the property did see in plain veiw [sic] a set of scales laying on a counter and a blue cloth bag containing 5 hypodermic needles, and in a cut out for a sink did see a plastic bag with a white powder that is consistent with material used to "cut" illegal drugs for distribution. Also in a partially opened cabinet above the sink in plain view were approx 2 corner baggies containing a white powder that is consistent with illegal drugs.

Trial Commissioner Frank Shook issued the second search warrant authorizing the search of the premises for illegal drugs, drug paraphernalia, and proceeds from the sale of illegal drugs. Upon execution of the search warrant, law enforcement officers found methamphetamine and firearms.

Defendant now challenges the lawfulness of the police search of his residence arguing that (1) the affidavit from the first search was insufficient to establish the confidential informant's reliability and therefore probable cause was lacking; (2) the affidavit from the first search failed to indicate any independent police investigation; (3) the information contained in the affidavit used to secure the first search warrant was stale; (4) the second search was unlawful as it was "fruit of the poisonous tree;" and (5) the searches fail under United States v. Leon, 468 U.S. 897 (1984).

## II. DISCUSSION

The Fourth Amendment states that "no warrants shall issue but upon probable cause, supported by oath or affirmation . . . ." U.S. Const. amend IV. Probable cause for the issuance of a search warrant is defined in terms of whether the affidavit sets out facts and circumstances which indicate "a fair probability that evidence of a crime will be located on the premises of the proposed search." United States v. Bowling, 900 F.2d 926, 930 (6th Cir.), cert. denied, 498 U.S. 837 (1990). See also United States v. Finch, 998 F.2d 349, 352 (6th Cir. 1993); United States v. Frazier, 423 F.3d 526 (6th Cir. 2005). Probable cause is determined by examining the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 238 (1983). A magistrate judge's probable cause determination should be made in a practical, common-sense fashion and reviewed in the same manner. United States v. Pelham, 801 F.2d 875, 877 (1986), cert. denied, 479 U.S. 1092 (1987). A magistrate's determination should not be set aside unless arbitrarily exercised. Id.

### A. Informant Reliability/Corroboration

The Defendant argues that there was insufficient probable cause for the issuance of the first search warrant because the police did not vouch for the reliability of the informant, nor did the police list any independent investigation they conducted that corroborated any of the informant's allegations.  United States v. Weaver, 99 F.3d 1372 (6th Cir. 1996).[1] Defendant submits that just giving the name of the informant to police along with a statement that the informant had committed a criminal activity with a suspect is not enough to establish probable cause.

In evaluating whether probable cause exists for issuing a search warrant, a judicial officer may rely on hearsay evidence.  United States v. Helton, 314 F.3d 812, 819 (6th Cir. 2003).  When confronted with hearsay information from an informant, a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying the hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Id. (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  In other words, while an affidavit must state facts supporting an independent judicial determination that the informant is

---

[1] Defendant's heavy reliance on United States v. Weaver is misplaced.  As noted by this Court in United States v. Pearson, 2005 WL 3050508 (W.D. Ky. November 14, 2005), the Sixth Circuit in United States v. Allen limited the holding in Weaver to the facts of that case.  211 F.3d 970 (6th Cir. 2000).

reliable, "those facts need not take any particular form." United States v. McCraven, 401 F.3d 693, 697 (6th Cir.), cert. denied, 126 S.Ct. 639 (2005)(citing United States v. Allen, 211 F.3d 970, 975-976 (6th Cir.), cert. denied, 531 U.S. 907 (2000)). As recognized by the Sixth Circuit, the affidavit "could state that police corroborated significant parts of the informant's story . . . [o]r the affiant could attest 'with some detail' that the informant provided reliable information in the past." Id. (citing Allen, 211 F.3d at 976). "Or there could be other indicia of the informant's reliability, such as a detailed description of what the informant observed first-hand, or the willingness of the informant to reveal his or her name." Id. Additionally, another indication of veracity and reliability is if in the process of implicating a defendant, the informant makes "statements against his own penal interest." United States v. Black, 2001 WL 427769, *4 (6th Cir.)("We think that such statements are inherently more truthful and reliable than statements which do not implicate the informant." Id. at *4), cert. denied, 534 U.S. 891 (2001)).

With this case law as guidance, and based upon the information contained in the four corners of the affidavit, the Court concludes that the requisite "fair probability" that contraband could be found at the Defendant's residence was established; and therefore, probable cause existed for the issuance of the search warrant.

The informant was not anonymous, rather the affidavit named the source of the information and described the basis of his knowledge. Specifically, Deputy Woods stated in his affidavit that Ricky Mitchell informed the deputy that he had taken the stolen welder to the Defendant's residence and traded it to the Defendant. Clearly, the informant had direct

and personal knowledge that the stolen welder was located at the Ray Vernon Road address because he personally took the welder there. "When a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit, the 'totality of the circumstances' presents a 'substantial basis' for conducting a search for that evidence." United States v. Pelham, 801 F.2d 875, 878 (6th Cir.1986). See also United States v. Washington, 380 F.3d 236, 245 (6th Cir. 2004); United States v. Combs, 369 F.3d 925 (6th Cir. 2004); United States v. Pearson, 2005 WL 3050508 (W.D. Ky. November 14, 2005). It is also significant for purposes of veracity and reliability that in the process of implicating the Defendant, the informant admitted to Deputy Woods his own participation in disposing of stolen property. As indicated above, an informant's statements against his own penal interest add to the reliability of the information. United States v. Jenkins, 313 F.3d 549, 554-555 (10th Cir. 2002), cert. denied, 538 U.S. 1006 (2003); United States v. Black, 2001 WL 427769, *4 (6th Cir. 2001); United States v. Southern, 2000 WL 1769633, *4 (6th Cir. November 16, 2000). The Court finds that this affidavit containing the name of the informant, a description of what he did or observed first-hand, and the informant's admissions against his own penal interest in stealing and then transferring the property is sufficient to support a finding of probable cause. Thus, the issuance of the search warrant was proper.

### B. Staleness

Defendant argues that the magistrate did not have probable cause to issue the first search warrant because the information contained in the affidavit used to secure the warrant

was stale. Defendant asserts that there is no allegation that he engaged in an ongoing criminal activity of trading stolen items or that he even knew that the welder in question was stolen. Defendant further contends that since this was an one-time event and several weeks had passed from the time Mitchell allegedly traded Defendant the welder, there was less probable cause to believe that he was still in possession of the welder. Finally, Defendant states that there was a significant likelihood that the small welder in question had been moved from the camper since Defendant was engaged in the business of an auto salvage yard.[2]

"The function of a staleness test in the search warrant context is not to create an arbitrary time limitation within which discovered facts must be presented to a magistrate." United States v. Henson, 848 F.2d 1374, 1382 (6th Cir.1988), cert. denied, 488 U.S. 1005 (1989). Whether the information in a search warrant affidavit is stale is determined on the circumstances in each case. United States v. Spikes, 158 F.3d 913, 923 (6th Cir. 1998), cert. denied, 525 U.S. 1086 (1999). Courts considering a challenge to a warrant application based on staleness look at the following variables: (1) the inherent nature or character of the crime; (2) whether the criminal is nomadic or entrenched; (3) whether the items to be seized are perishable or easily transferable; and (4) whether the place to be searched is a mere criminal forum of convenience or a secure operational base for criminal conduct. U.S. v. Noda, 137 Fed. Appx. 856 (6th Cir. June 24, 2005)(citing Spikes, 158 F.3d at 923). The length of time

---

[2] It does not appear that the stolen welder was actually found during the search of the premises.

between events described in an affidavit and the application for a warrant is salient, but not controlling. Id. (citing Sgro v. United States, 287 U.S. 206, 210-11 (1932)). Ultimately, the Court must determine whether "in light of the totality of the circumstances, the magistrate had a 'substantial basis' for concluding that 'a search would uncover evidence of wrongdoing.'" United States v. Wright, 343 F.3d 849, 864 (6th Cir. 2003), cert. denied, 541 U.S. 990 (2004)(quoting United States v. Sonagere, 30 F.3d 51, 53 (6th Cir. 1994)).

The affidavit in support of the first search warrant states that on February 14, 2005, Deputy Sheriff Steve Woods received information from Ricky Mitchell that he had traded a stolen welder to Defendant. The affiant did not state on what date Mitchell traded the stolen welder to Defendant. However, the affidavit is clear that the welder was reported stolen by the owner in early January and that Mitchell told Deputy Woods about it on February 14, 2005. Thus, it is clear from the face of the affidavit that Mitchell traded the stolen welder to Defendant some time between early January and February 14, 2005.

Considering the above factors, the Court finds that the passage of six weeks or less between the time Mitchell traded the welder to Defendant and the issuance of the search warrant did not render the information stale. The crime under investigation was receiving stolen property. The welder in question is a durable good and could properly be expected to remain in the Defendant's possession for a period of time. Defendant was entrenched, not nomadic. He lived and worked at the auto salvage junk yard in Scottsville, Kentucky where Mitchell delivered the stolen welder. The Court finds that in light of this information, it was not unreasonable for the magistrate to conclude there was a fair probability that the stolen

welder would be found at Defendant's residence/business.  See United States v. Collins, 61 F.3d 1379 (9th Cir.), cert. denied, 516 U.S. 1000 (1995)(six week old information regarding defendant's possession of firearm is not stale); United States v. Miles, 772 F.2d 613, 616 (10th Cir. 1985)(affidavit not stale where affiant stated that during past 24 hours he received information that two stolen guns were in defendant's possession and affidavit made clear that guns were stolen some two-and-a-half weeks before the tip); United States v. Pritchett, 40 Fed. Appx. 901, 905-906 (6th Cir. July 9), cert. denied, 537 U.S. 1023 (2002)(four month old information regarding defendant's possession of crates of firearms and ammunition is not stale); United States v. Grandstaff, 813 F.2d 1353, 1357 (9th Cir.), cert. denied, 484 U.S. 837 (1987)(five month lapse not sufficient to negate probable cause on charge of interstate transportation of stolen property).

### C.  Good Faith Exception

Even if the affidavit was insufficient, the Court finds that in light of the above case law, a reasonably well-trained officer would not have known the first search warrant was invalid.  Thus, a denial of the motion to suppress is also proper under the Leon good-faith exception.  United States v. Leon, 468 U.S. 897 (1984).  See McCraven, 401 F.3d at 698.

### D.  Fruit of the Poisonous Tree

Having concluded that the initial search warrant was valid, the Court concludes that the second search warrant should not be suppressed under the Fruit of the Poisonous Tree doctrine.

## III. CONCLUSION

For the reasons set forth above, the Court finds that the search warrants comply with the requirements of the Fourth Amendment. **IT IS HEREBY ORDERED** that the motions by Defendant, Anthony Wayne Jessie, to suppress [DN 20, DN 24] are **denied**.


Copies to:   Counsel of Record
             U.S. Marshal
             U.S. Probation